UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.  Criminal No. 4:22cr2

BRANDON LAMAR TYLER,

Defendant.

MEMORANDUM ORDER

This matter is before the Court on an objection by Defendant Brandon Lamar Tyler ("Defendant") to his advisory Guidelines range set forth in the Presentence Investigation Report ("PSR") generated by the United States Probation Office. For the reasons stated on the record at Defendant's sentencing hearing and memorialized within this Memorandum Order, the Court **SUSTAINS** Defendant's objection.

I. FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2022, a grand jury returned an indictment against Defendant charging him with one count of prohibited possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). On March 10, 2022, this Court entered an Order authorizing a United States Magistrate Judge to conduct guilty plea proceedings in this case. On March 22, 2022, Defendant appeared before Magistrate Judge Lawrence Leonard and plead guilty

to Count One of the indictment. Judge Leonard accepted the plea, and the matter was continued for sentencing.

On July 13, 2022, this Court held a truncated sentencing hearing, at which the Court found Defendant guilty as to Count One. Following the Court's finding, the hearing was cut short due to the Court's concern about the Defendant's base offense level under the United States Sentencing Guidelines in light of the Fourth Circuit's recent rulings in United States v. Campbell, 22 F.4th 438 (4th Cir. 2022), United States v. Ryles, No. 20-4513, 2022 WL 2167615 (4th Cir. June 16, 2022), and United States v. Monroe, No. 20-4083, 2022 WL 1655662 (4th Cir. May 25, 2022). The Court ordered, and both parties submitted, briefing in response to the following question: whether the Probation Officer correctly increased Defendant's base offense level to level 20 pursuant to Guidelines Manual § 2K2.1(a)(4)(A), on the grounds that Defendant committed the instant offense after sustaining a felony conviction for a "crime of violence." The disputed Guideline enhancement potentially applied based on Defendant's prior convictions for: (1) conspiring to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act Conspiracy"), and (2) brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("§ 924(c) brandishing").

Obviating the need for further analysis on the first issue, Hobbs Act Conspiracy, both the Government and Defendant recognized that, in light of the Fourth Circuit's holding in <u>United States v. Green</u>, Defendant's Hobbs Act Conspiracy conviction <u>cannot</u> serve as the requisite crime of violence under § 2K2.1 and § 4B1.2.[1] 996 F.3d 176 (4th Cir. 2021). The sole remaining dispute was therefore whether Defendant's § 924(c) brandishing conviction is a "crime of violence" under § 2K2.1 and § 4B1.2, as is necessary to support the enhanced base offense level of 20.

On September 29, 2022, Defendant's sentencing hearing resumed, and after review of the parties' briefs and pertinent case law, the Court held that Defendant's prior § 924(c) brandishing conviction is <u>not</u> a crime of violence as described in § 2K2.1 and § 4B1.2. As a result, Defendant was attributed with a base offense level of 14, and the Court subsequently imposed a sentence of 37 months imprisonment, a sentence within Defendant's advisory Guidelines range. This Memorandum Order memorializes the Court's ruling and corresponding reasoning on the matter.

## II. ANALYSIS

The applicable base offense level under Guideline § 2K2.1 turns on whether the "defendant committed any part of the instant offense after sustaining [a] felony conviction of . . . a crime of

---

[1] § 2K2.1 incorporates the definition of "crime of violence" set forth in § 4B1.2.

3

violence." U.S.S.G. § 2K2.1. "Crime of violence" is cross-referenced to the definition provided in § 4B1.2(a) and the associated application notes, where it is defined as: "any offense under federal or state law, punishable by imprisonment for a term exceeding one year" that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," (the "force clause"), or (2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)" (the "enumerated crimes clause"). Here, as the only count of conviction that potentially qualifies for the enhanced base offense level is the § 924(c) brandishing count, the enumerated crimes clause is not at issue.

As explained at the sentencing hearing, the Court notes that it largely agrees with the Government's analysis of the controlling Guideline and the associated application notes, finding that the ultimate issue did not turn on the elements of the predicate offenses that the § 924(c) charge is linked to (here, Hobbs Act Conspiracy and Hobbs Act robbery). Rather, the key question is whether an enhanced § 924(c) conviction involving brandishing, which is a specific intent crime, categorically qualifies as a "crime of violence" under the force clause in § 4B1.2(a).

4

Section 924(c)(1)(A) provides that if a firearm is brandished "during and in relation to any crime of violence," the defendant shall, in addition to any punishment for the crime of violence, be sentenced to a term of imprisonment of at least 7 years. Importantly, § 924(c), by its express terms, defines brandishing as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, <u>in order to intimidate that person</u>, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(4) (emphasis added). Additionally, it is important to note that the definition of "crime of violence" set forth in § 924(c) expressly extends to "property threat" crimes, defining "crime of violence" as including predicate felonies that have "as an element the use, attempted use, or threatened use of physical force against the person <u>or property of another</u>." 18 U.S.C. § 924(c)(3)(A) (emphasis added).

The inclusion of a property-threat crime in § 924(c)'s definition of "crime of violence" is in contrast, and thus not a "categorical match," with that same term in Guideline § 4B1.2. Cf. <u>United States v. Green</u>, 996 F.3d 176 (4th Cir. 2021). In <u>Green</u>, the Fourth Circuit held that property-threat robberies, and more specifically, substantive Hobbs Act robberies, do not qualify as "crimes of violence" under the § 4B1.2 Guideline definition because the use or threatened use of force <u>against property</u> does

5

not satisfy the Guideline force clause, which is limited to crimes against a person. Id. at 180-81. The Government, however, maintains that Green is distinguishable from the instant case because, unlike the facts of Green, the § 924(c) charge at issue here involved brandishing a firearm. The Government states that brandishing of a firearm in relation to a Hobbs Act robbery, in violation of § 924(c), must categorically be committed through the use, attempted use, or threatened use of physical force against another person. Such reasoning rests on a reading of the definition of "brandish" that would require all 924(c) brandishing offenses to involve an implicit threat to use violence against another person, even if the brandishing of the gun is expressly directed toward the victim's property. Although the Green Court rejected a similar line of argument, it did so based on the fact that the Hobbs Act statute does not require "proximity" between the victim and the threatened property, which can reduce or eliminate the implicit threat against the person. Id. at 180. Here, the Government argues that because brandishing a firearm must happen in the victim's presence, the implicit threat of physical harm to the victim is categorically present.

In response, Defendant argues that the Government conflates two distinct concepts: (1) the statutory force-clause inquiry into the object against which the threat of force is directed, and (2) the notion that the threat of force is intended to affect the

6

actions of another person. The Court agrees. Like the Hobbs Act statute, § 924(c)(3)(A) expressly applies to threatened use of force against property, with no express or implied requirement that a person be physically threatened during the crime. See Green, 996 F.3d at 180 ("Critically for our purposes – as detailed below – this definition, by express terms, goes beyond the use of force or threats of force against a person and <u>reaches the use of force or threats of force against property, as well</u>.") (Emphasis added). Here, the Government wants the Court to find that whenever a defendant threatens force against property and indicates that such damage will be caused by a gun that is present, one has necessarily and categorically threatened to harm <u>the person</u> that he seeks to intimidate. In essence, the Government contends that the mention of the firearm's presence to the victim necessarily involves a threat to shoot the victim if he or she does not comply.

To illustrate why the Court rejects the Government's position, it is first critical to note that <u>all</u> Hobbs Act property threat robberies require intimidation of a person as the means to acquire the desired object, i.e. cash or other valuable goods, otherwise the victim would not part with such object. The question then, is not whether the defendant had the specific intent to intimidate the victim, but rather, whether the intimidation was accomplished through a threat to inflict bodily harm (either direct or implicit), <u>or</u> a threat limited to the use of violence against

7

property. In this Court's view, accepting the Government's argument would swallow the "property-threat" species of both the Hobbs Act and many § 924(c) property-based gun crimes, both of which can be committed when a threat is directed solely against property. Stated another way, while § 924(c)(4) defines "brandish" as requiring the defendant to make the presence of a firearm known to the victim with the intent "to intimidate that person," the Government asks the Court to read into the statute the requirement that the intimidation occur <u>through a threat of physical force against the victim</u>. But based on the structure and context of § 924(c), and its express application to property threat crimes, the better way to read the brandishing provision within the context of § 924(c) is to require that the defendant accomplish the brandishing-based intimidation <u>through a threat of physical force against the victim OR his property</u>.

Turning to the parties' discussion of hypotheticals in their briefs, the Fourth Circuit has noted that where the "plain statutory language" is clear, the burden does not shift to the defendant to identify a situation in which the Government actually prosecuted an individual for conduct that falls within the statutory construction advocated by the defendant. See <u>Gordon v. Barr</u>, 965 F.3d 252, 260 (4th Cir. 2020). In this case, that means that Defendant should not be expected to highlight a prior case in which the Government prosecuted a § 924(c) brandishing crime where

8

the threat of force was directed at property rather than a person in a manner that did not result in an implicit threat to harm the person. Simply put, § 924(c)(1)(A) and (c)(3)(A) "reaches conduct directed at 'property' because the statute specifically says so." Green, 996 F.3d at 180; United States v. O'Connor, 874 F.3d 1147 (10th Cir. 2017).

Because, by the Court's reading, the statutory language is clear, it is the Government that has the burden to demonstrate that a threat directed at property is categorically elevated to a threat to inflict bodily harm whenever a firearm is brandished. The Government, however, falls short of demonstrating that an implicit threat to harm a person must always occur during all species of property-threat brandishing crimes. Importantly, under the Government's reasoning, if a robber threatens to burn down, or shoot at, a 7-Eleven clerk's unoccupied house in order to effectuate a Hobbs Act robbery of the convenience store, and the robber is carrying a concealed and secreted gun, neither the Hobbs Act robbery conviction nor the associated § 924(c) conviction would qualify for the Guideline enhancement because the robber's actions did not threaten physical force against the clerk. However, if the robber takes the additional step of telling the clerk he has a gun in his pocket, and that unless the clerk empties the register, he will leave the store and shoot the clerk's BMW or shoot at the clerk's unoccupied house, the Government contends

9

that the § 924(c) conviction immediately and categorically becomes a threat of bodily harm to the clerk solely because the gun was mentioned. The mere mention of a possessed firearm, however, when mentioned in the context of subsequent use of the firearm against property, does not have the far-reaching effect of implicitly threatening to harm the clerk.

To illustrate the Court's finding by use of another, even more plausible hypothetical, the Court suggests a scenario where a robber enters a small convenience store in a large city where the store owner is behind bulletproof glass (and inaccessible to the public), but his dog is tied up on the other side of the counter. As the robber enters the store, he tells the owner that he has a gun in his coat and that he will shoot the dog unless the owner empties the register. The store owner, who is safe behind the glass and has not even seen the gun, was never directly threatened nor has he been implicitly threatened with bodily harm, and he may even doubt whether the robber is actually armed. However, in fear for the well-being of his pet dog, he complies with the robber's demand. In that instance, there is a clear violation of the Hobbs Act, as well as the aggravated version of § 924(c) that requires "brandishing" in order to intimidate, because the robber made the presence of the firearm known to the owner for the purpose of intimidation through a property threat. However, because the owner is behind bulletproof glass, and the

10

clear purpose of the bulletproof glass is to keep him safe from such situations, the intimidation, even though it involved a "brandished" gun, was strictly limited to a property threat, with the robber lacking any viable capacity to injure the owner. In this scenario, which is far from a fanciful hypothetical in the Court's view, the statutory elements of brandishing would plainly be satisfied, but there would be no implicit threat to cause bodily injury to another person.

### III. CONCLUSION

For these reasons, the Court rejects the Government's well-argued position, as accepting such argument would improperly narrow § 924(c) and essentially read out the property clause whenever the § 924(c) crime is of the aggravated species that involves brandishing. As a result of this finding, Defendant's conduct does not fall within Guideline § 2K2.1(a)(4), but rather under § 2K2.1(a)(6).

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to the United States Attorney's Office in Newport News, Virginia and to counsel for the Defendant.

**IT IS SO ORDERED.**

/s/ *[signature]*
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 25, 2022